David Eugene ADCOCK, Appellant,

v.

Marshelia SHERLING, Appellee.

No. 04–95–00188–CV.

Court of Appeals of Texas, San Antonio.

April 10, 1996.

Marvin Bruce Martin (ADL), Bryan, Lane D. Thibodeaux, James & Thibodeaux, P.L.L.C., Bryan, for Appellant.

Wesley Hall, College Station, for Appellee.

Before STONE, DUNCAN and JOHN G. HILL (Assigned), JJ.

## OPINION

JOHN G. HILL, Justice,[1] (Assigned).

David Eugene Adcock appeals from the trial court's order appointing his niece Marshelia Sherling, the appellee, permanent guardian of the person and estate of his mother Lola, finding that certain funds given to him and his brother were trust funds that are part of his mother's estate, and awarding attorney's fees and costs to be paid from the trust fund. Adcock urges in nine points of error that the trial court: (1) erred when it found that he was ineligible to be appointed guardian of his mother's person and estate because the evidence is legally and factually insufficient to support the trial court's finding that he was asserting a claim adverse to

---

1. Assigned to this case by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003(b) (Vernon 1988).

his mother's property, (2) abused its discretion in appointing Sherling as the guardian of his mother's person and estate because there is legally insufficient evidence to support a finding that Sherling is eligible to serve in that capacity, as required by section 684 of the Texas Probate Code, (3) erred in finding that certain funds belonged to his mother's estate and were given in trust to him and his brother because the trial court had no personal jurisdiction over his brother, a co-owner of the funds; there were no pleadings placing the ownership of the trust fund in issue; the trial court had no subject matter jurisdiction over the fund; and the evidence was legally and factually insufficient to support such a finding, and (4) abused its discretion in ordering attorney ad litem fees and expenses and the fees and expenses of Sherling's attorney to be paid out of the trust fund, especially when there was no evidence to support the trial court's conclusion that the amount of the fees and expenses was reasonable and necessary.

We reform the judgment to reflect the appointment of David Eugene Adcock as the permanent guardian of the person and estate of Lola Adcock, that letters of guardianship issue to him as provided in the judgment, and that his powers and duties with respect to the guardianship are as provided in the applicable provisions of the Texas Probate Code, because there is no evidence to support the trial court's finding that Adcock is ineligible to serve as his mother's guardian and because he is entitled to be appointed guardian if eligible. We affirm the judgment as reformed, including the trial court's determination of the reasonableness and necessity of attorney's fees for the attorney ad litem and the payment of those fees from the fund held by Adcock and his brother because we must presume, since the statement of facts of the trial court's hearing on that issue is not before us, that the omitted evidence would support the trial court's judgment, and because we hold that the evidence supports the trial court's conclusion that the fund in question is an asset of the ward's estate since the beneficiary of a trust has an ownership interest in that trust. Based upon our determination that Adcock is entitled to be appointed guardian, we reverse that portion of the judgment dealing with the determination of the reasonableness and necessity of the attorney's fees for Marshelia Sherling, the appellee, and the payment of those fees from the fund held by Adcock and his brother and remand those issues for further proceedings consistent with this opinion.

■ Adcock contends in points of error numbers one and two that the trial court erred when it found he was ineligible to be appointed guardian of the person and the estate of his mother because the evidence is legally and factually insufficient to support the trial court's finding that he was asserting a claim adverse to his mother's property.

■ A person asserting a claim adverse to the proposed ward or the proposed ward's property, whether real or personal, may not be appointed guardian. TEX.PROB.CODE ANN. § 681 (Vernon Supp.1996). Adcock testified at the hearing that several years previously his mother gave him and his brother a certificate of deposit ("C.D.") as a gift to do with "what we saw necessary." Adcock took that to mean for her benefit. He testified that he was not a party to any lawsuit concerning or affecting his mother, that he was not currently indebted to her, and that he had no claim adverse to her or her real or personal property. None of the funds represented by the certificate and accumulated interest have been spent. The certificate is being held in an Oklahoma bank in the name of Adcock and his brother. The evidence shows that Adcock's mother gave him and his brother money to be used for her benefit and that the money is being held by the brothers for her benefit. The record does not establish how Adcock's duty as trustee of the trust for his mother's benefit would conflict with his role as guardian of his mother's person and her estate. Surely, if a parent gives a child a portion of the parent's property, trusting that the child will use the property to care for the parent's benefit, and the child holds the money for that purpose, the child is not thereby rendered ineligible to serve as the parent's guardian. Sherling refers us to evidence that after Adcock's mother executed a durable power of attorney to be effective upon her becoming disabled or incapacitated,

the brothers immediately took over handling her finances and business affairs. While there is some evidence of that, Sherling does not refer us to any evidence that the manner in which they did so in any way conflicted with their mother's interests. We do not see this evidence as showing that Adcock is asserting a claim adverse to the property of his mother or that he has a conflict of interest with her estate.

■ Sherling also raises the issue of the gift or trust to which we have previously referred. She points out that the funds involved amounted to virtually all of her grandmother's estate. She mentions the potential for conflicting claims regarding their ownership as showing that Adcock is asserting a claim adverse to the property of his mother or that he has a conflict of interest with her estate. As we have previously noted, while there potentially could have been an adverse claim or a conflict of interest, there is, in fact, no such adverse claim or conflict because Adcock's position concerning the money, that it is to be held by him and his brother to be used for their mother's benefit, is the same interest that the estate has in the property. As previously noted, we agree with Adcock that there is no evidence to support the trial court's finding that he is asserting a claim adverse to the property of his mother.

■ In addition to finding that Adcock was asserting a claim adverse to his mother's property, and that he had a conflict of interest with her estate, the trial court found that his niece is the best qualified person to serve as guardian, that Adcock is not as capable as his niece to serve as guardian, and that it is in the ward's best interest for Sherling to be appointed guardian of her grandmother's estate. In order to determine whether the trial court's erroneous findings as to the adverse claim and conflicts of interest were such errors as would be reasonably calculated to cause or that probably did cause the rendition of an improper judgment, we must determine whether the trial court had the authority to appoint Sherling as guardian even in the absence of a valid finding that Adcock is ineligible to serve.

Section 677 of the Texas Probate Code provides as follows:

(a) The court shall appoint a guardian for a person other than a minor according to the circumstances and considering the best interests of the ward. If the court finds that two or more eligible persons are equally entitled to be appointed guardian:

(1) the ward's spouse is entitled to the guardianship in preference to any other person if the spouse is one of the eligible persons;

(2) the eligible person nearest of kin to the ward is entitled to the guardianship if the ward's spouse is not one of the eligible persons; or

(3) the court shall appoint the eligible person who is best qualified to serve as guardian if:

(A) the persons entitled to serve under Subdivisions (1) and (2) of this section refuse to serve;

(B) two or more persons entitled to serve under Subdivision (2) of this section are related in the same degree of kinship to the ward; or

(C) neither the ward's spouse or any person related to the ward is an eligible person.

Tex.Prob.Code Ann. § 677 (Vernon Supp. 1996).

As we interpret this statute, Adcock was entitled to be appointed guardian by virtue of the provisions of section 677(a)(2) since he was the nearest of kin to the ward, and Sherling could not be appointed guardian because the requirements of section 677(3) were not met.

■ Sherling argues that we should interpret the statute to provide that the trial court could appoint whichever of the two it was in the best interest of the ward to appoint. She says that in finding that she was best qualified to serve as guardian and that Adcock is not as capable of prudently managing and controlling the ward, the trial court found that the two were not equally entitled to serve. In interpreting a statute, we must read it as a whole and construe it to give meaning and purpose to every part. *Ex parte Pruitt*, 551 S.W.2d 706, 709 (Tex.1977).

Also, in construing a statute, a specific provision is ordinarily controlling over a more general one. *Russell v. Ingersoll–Rand Co.,* 841 S.W.2d 343, 357 (Tex.1992). Applying those principles, we find that while the statute speaks in general terms at the beginning concerning appointing a guardian according to the circumstances and considering the best interests of the ward, it specifically sets forth the circumstances in which the trial court may appoint the eligible person who is best qualified to serve. Those circumstances are not met in this case. Construing the statute as a whole, we believe that it requires the appointment of the ward's spouse if eligible and willing to serve; the ward's next of kin, if eligible and willing to serve and the spouse is not eligible; and the best qualified person if the spouse and next of kin refuse to serve, there are two or more eligible persons related to the ward in the same degree of kinship to the ward, or neither the ward's spouse nor any person related to the ward is eligible to serve.

Section 677 of the Texas Probate Code is derived from former section 109 of the Probate Code, now repealed. That section required that the trial court appoint an eligible spouse in preference to others, the nearest of kin if no qualified spouse, or any other qualified person if there is no qualified spouse or if the qualified spouse and the nearest of kin should refuse to serve. The statute also provided that where there are two or more persons equally entitled, the guardianship shall be given to one or the other, according to the circumstances, only the best interest of the ward being considered. TEX.PROB. CODE ANN. § 109 (1980), *repealed by,* Acts 1993, 73rd Leg., R.S., ch. 957, § 75(2), 1993 TEX.GEN.LAWS 4081, 4182 (current version at TEX.PROB.CODE ANN. § 677 (Vernon Supp. 1996)). The language of the statute was amended in 1993 when the Texas Legislature changed the number of the statute as part of an overall plan to consolidate all statutes relating to guardianship into one location in the Texas Probate Code.

We note that in section 109 the terms "according to the circumstances" and considering the "best interest of the ward" were part of the section that dealt with the situation where two or more persons are equally entitled to be appointed. In the context of that statute, the term "entitled" related to the right to be considered by the court for the appointment. It was because of the right of spouses and next of kin to be appointed in preference to others that gave the term a different meaning from "eligible," which simply meant that a person was not "ineligible." Sherling argues that in section 677 it has a different meaning, relating to the competency of the person to serve as guardian, rather than that which it had in section 109.

The only consistent meaning of the term "entitled" within section 677 can be that relating to the right to be appointed either as it relates to eligibility or the family relationship to the ward, rather than as to the suitability of the individual as compared to another. Under Sherling's interpretation, the trial court could have appointed a non-related party, as opposed to either Sherling or Adcock, had such a person sought the appointment, and the trial court, while failing to find that Sherlock and Adcock were incapable of serving, simply found the non-related party to be more capable and that it would be in the ward's best interest for that person to serve. We do not feel that the legislature, when it amended the statute upon consolidation, intended to change the preference given to eligible and capable spouses and nearest of kin in the appointment of guardians.

Sherling relies on the cases of *Ramirez v. Garcia de Bretado,* 547 S.W.2d 717 (Tex.Civ. App.—El Paso 1977, no writ); *Carney v. Aicklen,* 587 S.W.2d 507 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.); and *Estate of Morris v. First International Bank,* 664 S.W.2d 132 (Tex.App.—San Antonio 1983, no writ). We find that all of these cases are distinguishable. In *Ramirez,* the court affirmed the trial court's appointment of the guardian of a minor of a maternal grandmother who enjoyed a statutory preference over a paternal uncle. *Ramirez v. Garcia de Bretado,* 547 S.W.2d at 718. Adcock enjoys the same type of statutory preference as that of the guardian whose appointment was upheld in *Ramirez.* The case of *Carney v. Aicklen* involved the appeal of a niece who lost her bid to be appointed instead of anoth-

er niece. The jury found "under the circumstances" and "considering only the best interest of [the ward]" that the person appointed should be appointed guardian. *Carney v. Aicklen,* 587 S.W.2d at 512. In *Carney,* the two applicants were equally related to the ward, whereas in this case Adcock enjoys a statutory preference by being more closely related to the ward. In *Estate of Morris,* a niece appealed when she lost her bid to be substituted as guardian in place of a bank. The trial court found that she had waived her right to be appointed guardian, and that she was ineligible to serve because she could not properly and prudently manage the estate of the ward. *Estate of Morris v. First Int'l Bank,* 664 S.W.2d at 136. In this case there is no contention that Adcock has waived any right to serve. The trial court, while finding that Adcock was not as capable as Sherling in managing the estate, declined to find that he was incapable of properly and prudently managing the estate or that he was unsuitable to be guardian.

Based upon our interpretation of the statute in question, as the nearest of kin who was eligible to serve, and therefore ·capable of serving, Adcock was entitled to be appointed guardian of his mother's person and of her estate. Consequently, the trial court's finding that he was ineligible to serve, based upon no evidence, caused the rendition of an improper judgment. We sustain point of error number one. In view of our determination of point of error number one, we need not consider points of error numbers two and three.

■ Adcock urges in points of error numbers four, five, six, and seven that the trial court erred in finding that the funds previously discussed were given in trust to him and his brother. Adcock testified that his mother gave him and his brother James, a C.D. "to do with what we saw necessary. And, of course, I took that to mean for her benefit."

■ Adcock contends that the account in question was not a part of the ward's estate. A ward's estate means "the real and personal property of a ward ... (including any property to be distributed to the representative of the deceased ward by the trustee of a trust

that terminates on the ward's death.)" TEX. PROB.CODE ANN. § 601(8) (Vernon Supp. 1996). A beneficiary of a trust has an ownership interest in the trust, having equitable title to the trust property. *See Jameson v. Bain,* 693 S.W.2d 676, 680 (Tex.App.—San Antonio 1985, no writ). Therefore, the account was a part of the ward's estate.

Adcock contends that the trial court lacked jurisdiction to divest him and his brother of the funds represented by the C.D. Part of his jurisdictional argument is based upon the premise that the property in question was not part of his mother's estate. Inasmuch as we have held that it was part of the estate, this argument must fail. He next argues that the trial court erred by divesting his brother James of his interest in the C.D. He indicates that James was not served with process, and that he was present at trial, but did not participate in the proceeding. Sherling points out that James had filed a "Waiver and Renunciation of Right to be Appointed Guardian" prior to the hearing, thereby entering an appearance in the case. An appearance constitutes waiver of service of process. *Dodson v. Seymour,* 664 S.W.2d 158, 161 (Tex.App.—San Antonio 1983, no writ). Consequently, we hold that the trial court had personal jurisdiction over Adcock's brother, James.

Adcock urges that there was no pleading placing the ownership of the trust fund in issue. The pleadings before the trial court concerned the appointment of a permanent guardian. There were certain expenses, including fees for the attorney ad litem, that had to be paid in connection with that proceeding. It was necessary for the trial court to determine what the assets of the ward were in order to discover what funds were available from which those expenses could be paid. Consequently, we conclude that the pleadings, by necessity, placed the ownership of the funds in issue. We overrule points of error numbers four, five, six, and seven.

■ Adcock insists in points of error numbers eight and nine that the trial court abused its discretion in ordering the attorney ad litem's fees and expenses and Sherling's attorney's fees to be paid out of the ward's

estate. Adcock claims there was no evidence presented to support the trial court's conclusion that the amount of the fees and expenses were reasonable and necessary, and just generally, that the fees and expenses should not be paid from the fund. With respect to the reasonableness and necessity of the attorney ad litem's fee, the record reflects that the trial court held an evidentiary hearing on the issue. We have no statement of facts of that hearing. Consequently, we must presume that the omitted evidence would support the judgment of the trial court. *Schafer v. Conner*, 813 S.W.2d 154, 155 (Tex.1991). We believe that in the interest of justice the issue of determining a reasonable fee for Sherling's attorney, and whether such a fee should be paid from the trust fund should be reexamined in view of our determination with respect to the other points of error. Adcock's contention that the fees for the attorneys should not be paid from the fund held by him and his brother is based on his view that the trial court had no jurisdiction over his brother and that it did not have subject matter jurisdiction over the fund. As previously noted, the trial court did have personal jurisdiction over Adcock's brother and did have subject matter jurisdiction over the fund. We overrule points of error numbers eight and nine as they relate to fees for the attorney ad litem and payment of those fees from the trust fund and sustain those points as they relate to fees for Sherling's attorney and the payment of such fees from the fund.

We reform the judgment to reflect the appointment of David Eugene Adcock as the permanent guardian of the person and estate of Lola Adcock, that letters of guardianship issue to him as provided in the judgment, and that his powers and duties with respect to the guardianship are as provided in the applicable provisions of the Texas Probate Code. We affirm the judgment as reformed, including the trial court's determination of the reasonableness and necessity of attorney's fees for the attorney ad litem and the payment of those fees from the fund held by Adcock and his brother, but we reverse that portion of the judgment dealing with the determination of the reasonableness and necessity of the attorney's fees for Marshelia

Sherling, the appellee, and the payment of those fees from the fund held by Adcock and his brother. Costs of court are to be charged one-fourth to David Eugene Adcock, the appellant, and three-fourths to Marshelia Sherling, the appellee.