IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-07-00025-CV

 

Pilgrim's Pride Corporation,

                                                                                    Appellant

 v.

 

James Thompson,

                                                                                    Appellee

 

 

 



From the 170th District Court

McLennan County, Texas

Trial Court No. 2003-2253-4

 



MEMORANDUM  Opinion



 

The parties have filed a “Joint Motion to Dismiss
Appeal,” stating that they have entered into a settlement agreement and asking
us to dismiss this appeal and to tax costs against the party incurring the cost. 
See Tex. R. App. P. 42.1(a)(2). 
The motion to dismiss is granted, and the appeal is dismissed.  In accordance
with the agreement of the parties, costs are taxed against the party incurring
same.  See Tex. R. App. P. 42.1(d).

 




PER CURIAM

 

 

Before Chief Justice
Gray,

            Justice
Vance, and

            Justice Reyna

Appeal dismissed

Opinion delivered and
filed December 19, 2007

[CV06]








 






/span>

Background

            Wuemling’s mother Wilda Griffin
instituted this proceeding in March 2002 seeking to be appointed as Keller’s
temporary guardian.  The constitutional county court appointed Griffin as temporary guardian of Keller’s person and estate.  Two months later, Gwen
Seymour was appointed as permanent guardian of Keller's person and estate.  Citing
“poor health” on Seymour’s part, Seymour and Zipp together filed an application
for Zipp’s appointment as successor guardian about one year after Seymour’s appointment.  The county court granted this application.

            Zipp filed an application to sell
Keller’s 1997 Lincoln Town Car and her 1994 Ford F-150 pickup and to apply the
proceeds to Keller’s care and maintenance.  Griffin, Wuemling, and other family
members filed a document with the county court alleging: (1) Keller was
competent; (2) Keller desired to live in her home in Hico rather than twenty
miles away in a Stephenville nursing home; (3) Keller’s assets were “being
depleted rapidly with legal expenses and medical expense which may or may not
be necessary”; and (4) Keller should be given “an independent professional
evaluation” to determine whether she was incompetent.  Wuemling also sent a
letter to the judge, asking him to “fully review” the case and do what was in
Keller’s best interest.

            The county court granted Zipp’s
application to sell the vehicles.  Zipp filed a report regarding the sale of
the vehicles for $10,200, and the court entered decrees confirming their sale.

            Wuemling then filed an application to
remove Zipp as guardian and appoint herself as successor guardian.  Zipp responded
with a general denial.  After setting the matter for hearing, the county court
signed an order transferring the removal dispute to the district court.  Zipp
filed a continuance motion and a request for the appointment of a statutory
probate judge three days later.  Zipp later served a request for production on
Wuemling.  Wuemling filed an objection to Zipp’s continuance request and a
motion for a protective order regarding the request for production.  The
district court granted the continuance motion and Wuemling’s motion for a
protective order.  After a bench trial, the district court ordered Zipp’s removal
and appointed Wuemling as successor guardian.

Transfer to District Court

            Zipp contends in her first issue that (a)
the county court erred by transferring the matter to district court on its own
motion and (b) the “district court erred in accepting the transfer of the
entire case instead of just Appellee’s original complaint” (i.e., the
application for Zipp’s removal).

            The version of section 606(b) of the
Probate Code applicable to this case provides in pertinent part:

in contested guardianship matters, the judge of
the county court may on the judge’s own motion, or shall on the motion of any
party to the proceeding, according to the motion, request as provided by Section
25.0022, Government Code, the assignment of a statutory probate court judge to
hear the contested portion of the proceeding, or transfer the contested portion
of the proceeding to the district court, which may hear the transferred
contested matters as if originally filed in the district court.  If the judge
of the county court has not transferred a contested guardianship matter to the
district court at the time a party files a motion for assignment of a statutory
probate court judge, the county judge shall grant the motion and may not
transfer the matter to the district court unless the party withdraws the
motion.

 

Act of May 1, 2001, 77th Leg., R.S., ch. 63, § 2,
2001 Tex. Gen. Laws 104, 105 (amended 2003)[3]
(current version at Tex. Prob. Code Ann.
§ 606(b), (b-1) (Vernon Supp. 2006)).

            Zipp’s motion for the appointment of a
statutory probate court judge was not filed until after the county court had
already transferred the matter to the district court.  Thus, the county court
did not err by transferring the matter to the district court.

            Zipp also contends that the district
court exceeded the scope of its jurisdiction by accepting the transfer of the
entire guardianship proceeding rather than just Wuemling’s application for her
removal.  However, Zipp does not refer to any particular ruling which the
district court made as being beyond the scope of its jurisdiction.  It appears
that Zipp’s complaint is directed primarily at the county court’s refusal to
consider her application for authority to rent Keller’s home, which Zipp filed
with the county court after the transfer.  Instead of ruling on this
application, the county court signed an order transferring it to the district
court.  However, the district court never ruled on Zipp’s application to rent
Keller’s home.

            The issue of Zipp’s authority to rent
Keller’s home has no bearing on “(1) whether the district court properly
removed Zipp as guardian, [or] (2) whether Zipp has a legally cognizable
interest in fees and costs.”  See Zipp, 218 S.W.3d at 74.  Therefore,
this portion of Zipp’s first issue has been rendered moot by Keller’s death.

            Accordingly, we overrule Zipp’s first
issue.

Protective Order

            Zipp contends in her second issue that
the court abused its discretion by granting Wuemling’s motion for a protective
order.  Wuemling sought a protective order from Zipp’s request for production
which sought production of a broad array of financial, medical, legal and
personal documents.  Zipp argues that the requested financial documents are
relevant to Wuemling’s ability to manage her own financial affairs and by
extension Keller’s finances and the requested medical documents are relevant to
whether Wuemling may have some medical condition which renders her
“disqualified” to serve as guardian.

            Zipp’s request for production sought
documents relevant to Wuemling’s suitability and qualifications to serve as a
successor guardian.  The request for production has no bearing on “(1) whether
the district court properly removed Zipp as guardian, [or] (2) whether Zipp has
a legally cognizable interest in fees and costs.”  See Zipp, 218 S.W.3d at
74.  Therefore, we dismiss Zipp’s second issue as moot.  See Nu-Way Energy
Corp. v. Delp, 205 S.W.3d 667, 674 (Tex. App.—Waco 2006, pet. denied).

Exclusion of Evidence

            Zipp contends in her third issue that the
court abused its discretion by sustaining Wuemling’s objection to questioning
regarding Wuemling’s contention that she is Keller’s step-granddaughter.  Wuemling
alleges that her mother Wilda Griffin is Keller’s step-daughter.  This
allegation relates to Wuemling’s contention that Zipp should be removed as
guardian because Wuemling had a prior right to appointment as successor
guardian which she had not waived.  See Tex. Prob. Code Ann. § 759(b) (Vernon 2003).  However, the
court did not find for Wuemling on this contention.  Therefore, Zipp cannot
have been harmed by the court’s ruling.  See Tex. R. App. P. 44.1(a)(1).  Accordingly, we overrule Zipp’s
third issue.

 

 

Removal of Guardian

            Zipp contends in her fourth issue that
the court abused its discretion by removing her as guardian.  In particular,
Zipp argues that there is factually insufficient evidence: (1) that she cruelly
treated Keller or neglected to educate or maintain Keller as liberally as
permitted by the means of the estate or by Keller’s ability or condition; or
(2) that she interfered with Keller’s progress or participation in community
programs.[4]

            We review a guardianship determination
under an abuse-of-discretion standard.  In re Guardianship of Finley, 220
S.W.3d 608, 612 (Tex. App.—Texarkana 2007, no pet.); Thedford v. White, 37
S.W.3d 494, 496 (Tex. App.—Tyler 2000, no pet.).  We do not conduct an
independent review of findings of fact in such a case under traditional legal
and factual sufficiency standards.  Finley, 220 S.W.3d at 612; see
also In re Marriage of Eilers, 205 S.W.3d 637, 640 (Tex. App.—Waco 2006,
pet. denied) (child support case).   Rather, legal and factual sufficiency are
factors which can be considered in determining whether an abuse of discretion
has occurred.  Id.

            We view the evidence in the light most
favorable to the trial court’s decision.  Paradigm Oil, Inc. v. Retamco
Operating, Inc., 161 S.W.3d 531, 536 (Tex. App.—San Antonio 2004, pet.
denied); Thedford, 37 S.W.3d at 496-97.  An abuse of discretion does not
occur when the trial court’s decision is based on conflicting evidence.  Davis v. Huey, 571 S.W.2d 859, 862 (Tex. 1978); Smith v. McCarthy,
195 S.W.3d 301, 305 (Tex. App.—Fort Worth 2006, pet. denied); Paul v.
Merrill Lynch Trust Co. of Tex., 183 S.W.3d 805, 812 (Tex. App.—Waco 2005,
no pet.).

            The applicable version of section
761(c)(6) of the Probate Code authorizes the removal of a guardian who “cruelly
treats the ward, or neglects to educate or maintain the ward as liberally as
the means of the ward’s estate and the ward’s ability or condition permit.” 
Act of May 9, 2001, 77th Leg., R.S., ch. 217, § 15, 2001 Tex. Gen. Laws 410,
419-20 (amended 2005)[5]
(current version at Tex. Prob. Code Ann.
§ 761(c)(6), (6-a) (Vernon Supp. 2006)) (hereinafter, “Tex. Prob. Code Ann. § 761(c)(6)”). 
The court made the following findings to support its determination that removal
was authorized under this provision:

·                   
Zipp has allowed the Ward to
reside under circumstances which are not conducive to her mental health or
personal hygiene;

 

·                   
Zipp has retained the Ward in
a locked unit at a nursing center away from her primary residence and friends
which denied her access to her church and other community activities which
would be beneficial to the Ward and has made it inconvenient and inaccessible
to the Ward’s friends, relatives and acquaintances to visit with the Ward; and

 

·                   
Zipp has failed to have the
Ward evaluated medically as liberally as the means of the Ward and the
conditions of the Ward’s Estate permit.

 

            Several witnesses testified that it
would be more beneficial for Keller to live in a nursing home in Hico, closer
to her family, friends, and acquaintances.  They explained that it was
difficult for many of Keller’s elderly friends to make the trip to
Stephenville.  Her treating physician testified that he was willing to consider
more interaction with people with whom Keller was familiar and that additional
face-to-face contacts might help with her depression and dementia symptoms. 
Wuemling and Keller’s nephew Gregory Winkles both testified that it would be
beneficial for Keller to be evaluated by a different physician who might
recommend a different course of treatment.  Keller’s treating physician stated
that he “always welcome[s] a second opinion” and agreed that a geriatric center
might provide a more extensive evaluation of Keller’s condition and that
geriatric specialists may prescribe a different regimen.

            Zipp testified that she was satisfied
with Keller’s current regimen and believed her current placement was
appropriate.  Zipp desired to have Keller evaluated for hospice care because of
the marked decline in Keller’s health in the weeks before trial.  The director
of nurses for Keller’s nursing home testified that Keller’s health had declined
to the point where she could no longer care for herself.  She explained that it
was necessary to house patients like Keller in a secure area for their own
safety.

            The record contains conflicting
evidence regarding whether Zipp and the nursing home staff were adequately
providing for Keller’s personal grooming needs, whether she had adequate
clothing, and whether her living conditions were sanitary.  Wuemling testified
that Keller had always been particular about her appearance and liked to dress
nicely, to fix her hair nicely, and to wear makeup.  According to Wuemling,
however, Keller’s hair was always a mess at the nursing home, and Zipp had
failed to purchase any new clothes for her.  Another witness testified that
there was a “stench” in Keller’s area of the nursing home related to “her
hygiene and different things.”  Conversely, Zipp and other witnesses testified
that Keller had her hair and nails done once a week and that the sanitary
conditions in the nursing home were appropriate.  Zipp also stated that Keller
had plenty of clothes.

            Finally, a witness testified that a
former male employee of the nursing home engaged in inappropriate behavior with
Keller, trying to bathe her.  Law enforcement was contacted, and the employee
was terminated.  Zipp disputed this testimony and contended that the nursing
home investigated the matter and found no evidence to substantiate these
claims.

            The record does not in any sense
contain overwhelming evidence to support Zipp’s removal as guardian. 
Nevertheless, we must view the evidence in the light most favorable to the
court’s decision, and if that decision is based on conflicting evidence, no
abuse of discretion is shown.

            Based on the evidence recited, we
cannot say that the court abused its discretion to conclude that Zipp had
failed to maintain Keller “as liberally as the means of the ward’s estate and
the ward’s ability or condition permit.”  See Tex. Prob. Code Ann. § 761(c)(6).  In light of this
conclusion, we need not determine whether the court abused its discretion by
finding in Wuemling’s favor on the other grounds for removal alleged.




Accordingly, we overrule Zipp’s fourth issue and
affirm the judgment.

 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

Affirmed

Opinion delivered and
filed August 1, 2007

[CV06]









[1]
              This “third issue” is not
specifically listed in the introductory portion of Zipp’s brief stating the
issues presented.  See Tex. R.
App. P. 38.1(e).  Nevertheless, it is separately briefed on pages 19-22
of her brief.

 





[2]
              As the Supreme Court
explained, the second issue which remains in controversy (Zipp’s “legally
cognizable interest in guardian fees, attorney’s fees, and costs”) depends on
whether she was properly removed as guardian.  See Zipp v. Wuemling, 218
S.W.3d 71, 72-73 (Tex. 2007) (per curiam).  Thus, our primary focus is the
propriety of Zipp’s removal.





[3]
              Section 606(b) applies to “those
counties in which there is no statutory probate court, county court at law, or
other statutory court exercising the jurisdiction of a probate court.”  Act of
May 1, 2001, 77th Leg., R.S., ch. 63, § 2, 2001 Tex. Gen. Laws 104, 105
(amended 2003) (current version at Tex.
Prob. Code Ann. § 606(b) (Vernon Supp. 2006)).  The 2003 amendments
apply to any guardianship proceeding “commenced on or after the effective date
of this Act” which was September 1, 2003.  Act of May 30, 2003, 78th Leg.,
R.S., ch. 549, §§ 34(a), 40, 2003 Tex. Gen. Laws 1858, 1870-71.  Because the
Keller guardianship proceeding was commenced in 2002, these amendments do not
apply.





[4]
              Zipp raises several additional
challenges to the court’s findings which we do not address because the
additional challenges do not relate to the statutory grounds for removal relied
on by the court.

 





[5]
              The 2005 amendments apply to
any motion for removal of a guardian “made or filed on or after the effective
date of this Act” which was September 1, 2005.  Act of May 12, 2005, 79th Leg.,
R.S., ch. 127, §§ 2, 3, 2005 Tex. Gen. Laws 260, 261.  Because Wuemling filed
her motion to remove Zipp as guardian in 2003, these amendments do not apply.